### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**<br>600 Pennsylvania Avenue, N.W.<br>Washington, DC 20580<br><br>                             Plaintiff,<br><br>        v.<br><br>**POST HOLDINGS, INC.**<br>2503 S. Hanley Road<br>St. Louis, Missouri 63144<br><br><br>        And<br><br>**TREEHOUSE FOODS, INC.**<br>2021 Spring Road, Suite 600<br>Oak Brook, Illinois 60523<br><br>                       Defendants. | Civil Action No. _____-cv-_____<br><br><br><br>**PUBLIC VERSION** |

### COMPLAINT FOR TEMPORARY RESTRAINING ORDER
### AND PRELIMINARY INJUNCTION PURSUANT TO
### SECTION 13(b) OF THE FEDERAL TRADE COMMISSION ACT

Plaintiff, the Federal Trade Commission ("FTC" or "Commission") petitions this Court to enter a stipulated temporary restraining order and grant a preliminary injunction enjoining Post Holdings, Inc. ("Post") from consummating its proposed acquisition of assets relating to ready-to-eat ("RTE") cereal from TreeHouse Foods, Inc. ("TreeHouse") (the "Proposed Acquisition"). Plaintiff seeks this provisional relief pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and Section 16 of the Clayton Act, 15 U.S.C. § 26. Absent such provisional relief, Post and TreeHouse (collectively, "Defendants") would be free to consummate the Proposed Acquisition after 11:59 p.m. on December 30, 2019.

The Commission requires the aid of this Court to maintain the status quo and to prevent interim harm to competition during the pendency of an administrative trial on the merits.  The Commission has already initiated that administrative proceeding, pursuant to Sections 7 and 11 of the Clayton Act, 15 U.S.C. §§ 18, 21, and Section 5 of the FTC Act, 15 U.S.C. § 45, by filing an administrative complaint on December 19, 2019.  Pursuant to FTC regulations, an administrative hearing on the merits will begin five months from the date of that filing (*i.e.*, on May 27, 2020).  16 C.F.R. § 3.11(b).  The administrative hearing will determine the legality of the Proposed Acquisition and will provide all parties a full opportunity to conduct discovery and present testimony and other evidence regarding the likely competitive effects of the Proposed Acquisition.

## I.     NATURE OF THE CASE

1.   This is an action to preliminarily enjoin the consummation of an anticompetitive acquisition of TreeHouse's private label RTE cereal business by Post, its close and largest competitor in the market.  Post and TreeHouse are two of only three significant manufacturers and distributors of private label RTE cereal in the United States, and their combination would give Post a share of more than ███████ of an already highly concentrated market, leading to higher prices for retailers and consumers.  Pursuant to an Asset Purchase Agreement, Post plans to acquire TreeHouse's RTE cereal assets for $████████.

2.   Defendants compete vigorously today.  Defendants' own internal business documents show that the effect of the Proposed Acquisition "may be substantially to lessen competition, or to tend to create a monopoly" in violation of the Clayton Act, and harm U.S. consumers.  In internal business documents, both Post and TreeHouse recognize each other as close competitors

for private label RTE cereal business.  Post historically has acknowledged that TreeHouse is the "market leader" in the private label RTE cereal category and recognizes that Post has grown its own private label share by "stealing" volume, primarily from TreeHouse.  TreeHouse describes itself as the "#1 U.S. Private Label RTE Cereal Manufacturer."  TreeHouse correspondingly describes Post as its "largest private label competitor" and a "major threat" to take away private label RTE cereal business.

3.   Post and TreeHouse are often retailers' two best options for private label RTE cereal. Retailers play Post and TreeHouse off each other to obtain lower pricing, better service, and improvement of other contract terms.  Indeed, Post and TreeHouse frequently lower their prices and make other concessions to take business away from each other and to avoid losing business to each other.  The Proposed Acquisition would eliminate this head-to-head competition and would give Post the power and incentive to increase prices and decrease services for private label RTE cereal for U.S. retailers and their customers.

4.   Under the 2010 U.S. Department of Justice and Federal Trade Commission Horizontal Merger Guidelines ("Merger Guidelines"), a post-acquisition market-concentration level above 2,500 points, as measured by the Herfindahl-Hirschman Index ("HHI"), and an increase in market concentration of more than 200 points, renders an acquisition presumptively anticompetitive.  Based on volume of sales, the Proposed Acquisition would significantly increase concentration in an already highly concentrated market for the sale of private label RTE cereal to U.S. retailers, well beyond the thresholds set forth in the Merger Guidelines.  Thus, under the Merger Guidelines, the Proposed Acquisition is presumptively anticompetitive.

5.   New entry or expansion by current market participants would not be timely, likely, or sufficient to deter or counteract the likely anticompetitive effects of the Proposed Acquisition.

6.   Defendants cannot demonstrate cognizable and merger-specific efficiencies that rebut the strong presumption and other evidence that the Proposed Acquisition likely would substantially lessen competition in the relevant market.

7.   On December 19, 2019, by a 5-0 vote, the Commission found reason to believe that the Proposed Acquisition would substantially lessen competition in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, and Section 5 of the FTC Act, 15 U.S.C. § 45.  On the same day, the Commission commenced an administrative proceeding before an Administrative Law Judge, with the merits trial scheduled to begin on May 27, 2020.  The ongoing administrative proceeding provides a forum for all parties to conduct discovery, followed by a merits trial with up to 210 hours of live testimony.  *See* 16 C.F.R. § 3.41(b) (2014).  The decision of the Administrative Law Judge is subject to appeal to the full Commission, which, in turn, is subject to judicial review by a United States Court of Appeals.

8.   The parties have stipulated to the Court's entry of a temporary restraining order preventing Defendants from consummating the Proposed Acquisition until after 11:59 p.m. EST on the fifth business day after this Court rules on a motion for a preliminary injunction or until after a date set by the Court.  Such a temporary restraining order is necessary to preserve the status quo and protect competition while the Court considers Plaintiff's application for a preliminary injunction.  The Commission is entitled to preliminary injunctive relief under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), because such relief is necessary to preserve the status quo and protect competition during the Commission's ongoing administrative proceeding. Allowing the Proposed Acquisition to proceed before the administrative proceedings have concluded would harm retailers and end consumers, and undermine the Commission's ability to

craft an effective remedy if it found the Proposed Acquisition to be unlawful after a full

administrative trial on the merits and any subsequent petition for review.

## II.    JURISDICTION AND VENUE

9.   This Court's jurisdiction arises under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b);

and 28 U.S.C. §§ 1331, 1337, and 1345.  This is a civil action arising under Acts of Congress

protecting trade and commerce against restraints and monopolies, and is brought by an agency of

the United States authorized by an Act of Congress to bring this action.

10. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), provides in pertinent part:

> Whenever the Commission has reason to believe
>
> > (1) that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission, and
> >
> > (2) that the enjoining thereof pending the issuance of a complaint by the Commission and until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final, would be in the interest of the public – the Commission by any of its attorneys designated by it for such purpose may bring suit in a district court of the United States to enjoin any such act or practice. Upon a proper showing that weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond . . . .

11. Defendants are, and at all relevant times have been, engaged in activities in or affecting

"commerce" as defined in Section 4 of the FTC Act, 15 U.S.C. § 44, and Section 1 of the

Clayton Act, 15 U.S.C. § 12.

12. The FTC Act, 15 U.S.C. § 53(b), authorizes nationwide service of process, and personal

jurisdiction exists where service is effected pursuant to federal statute.  Fed. R. Civ. P.

4(k)(1)(C).  Additionally, both Defendants conduct business in the District of

Columbia.  Defendants are subject to personal jurisdiction in the District of Columbia and venue is proper in the District of Columbia under 28 U.S.C. § 1391(c)(2) and 15 U.S.C. § 53(b).

### III.     THE PARTIES AND THE PROPOSED ACQUISITION

13. Plaintiff, the Federal Trade Commission, is an administrative agency of the United States government, established, organized, and existing pursuant to the FTC Act, 15 U.S.C. §§ 41–58, with its principal offices at 600 Pennsylvania Avenue, N.W., Washington, DC 20580.  The Commission is vested with authority and responsibility for enforcing, *inter alia*, Section 7 of the Clayton Act, 15 U.S.C. § 18, and Section 5 of the FTC Act, 15 U.S.C. § 45.

14. Defendant Post, headquartered in St. Louis, Missouri, is a publicly traded corporation organized under the laws of Missouri.  Post has offerings in the center-of-the-store, foodservice, food ingredient, refrigerated, active nutrition, and private brand food categories.  Through its Post Consumer Brands unit, Post manufactures, markets, and sells a broad portfolio of well-known national RTE cereal brands, including Honey Bunches of Oats, Pebbles, and Grape-Nuts, as well as a variety of private label RTE cereal products.  Post produces approximately 28 formulations of private label RTE cereal and offers retailers natural, organic, and clean label private label RTE cereal products.  In fiscal year 2018, Post Consumer Brands' retail sales of private label RTE cereal were approximately $█████████.

15. Defendant TreeHouse, headquartered in Oak Brook, Illinois, is a publicly traded corporation organized under the laws of Delaware.  TreeHouse is a leading manufacturer of private label food and beverage products across multiple categories, with total annual revenues of approximately $5.8 billion in fiscal year 2018.  TreeHouse is the largest manufacturer of private label RTE cereal in the United States through its TreeHouse Private Brands, Inc.

subsidiary.  In fiscal year 2018, TreeHouse's retail sales of private label RTE cereal were $█████ ██████ .

16. On May 1, 2019, Post and TreeHouse signed an Asset Sale Agreement pursuant to which Post will acquire TreeHouse's private label RTE cereal business, including TreeHouse's RTE cereal product formulations and manufacturing plants.  Post eventually plans to integrate TreeHouse's private label RTE cereal business into Post's existing private label RTE cereal business.  The total consideration for the Proposed Acquisition is approximately $███████ .

17. Pursuant to an agreement between Defendants and Commission staff, unless temporarily restrained and preliminarily enjoined by this Court, Defendants would be free to consummate the Proposed Acquisition after 11:59 p.m. on December 30, 2019.

18. On December 19, 2019, the Commission commenced an administrative proceeding on the antitrust merits of the Proposed Acquisition before an Administrative Law Judge, with the plenary trial scheduled to begin on May 27, 2020.  In authorizing the filing of this complaint, the Commission determined that (i) it has reason to believe the Proposed Acquisition would violate the Clayton Act and the FTC Act by substantially lessening competition in one or more lines of commerce, and (ii) a preliminary injunction of the Proposed Acquisition pending the resolution of the Commission's administrative proceedings and any appeals will promote the public interest, so as to minimize the potential harm to customers and preserve the Commission's ability to order an adequate remedy if it concludes, after the administrative proceeding, that the Proposed Acquisition is unlawful.

## IV.        RELEVANT MARKET

19. The relevant market in which to evaluate the effects of the Proposed Acquisition is no broader than the sale of private label RTE cereal to retailers in the United States.

A.        **Relevant Product Market**

20. The sale of private label RTE cereal to retailers is the relevant product market.

21. Post and TreeHouse each manufacture and sell RTE cereal.  RTE cereal (or cold cereal) is food made from processed grains like wheat, rice, and oats that requires no preparation and no heating before consumption.  RTE cereal is dry and sold in a variety of packaging (*e.g.*, boxes, bags, and cups) and can be consumed dry or with milk.  RTE cereal is a popular food; the category as a whole enjoys a household penetration rate over 90 percent, although consumption has gradually declined over time.

22. Defendants do not sell their RTE cereal products to end consumers.  Instead, both Defendants compete to sell their RTE cereal to U.S. retailers, including conventional grocery stores (such as Kroger), discount supermarkets (such as Aldi), and mass merchants (such as Walmart).  Some retailers purchase RTE cereal as part of a purchasing cooperative (such as Topco).  The retailers then sell these RTE cereal products under the retailer's proprietary trade names (*i.e.*, private labels) to their in-store customers, the end consumers.

23. Many retailers offer private label RTE cereal, among other private label products, in their stores.  Private label products provide a lower-cost alternative to the national brands—due to lower advertising and marketing costs—while offering customers similar quality.  Each retailer's private label brand is available only at that retailer's locations.  For example, Walmart's "Great Value" private label RTE cereal product is only available at Walmart.

24.  Typically, private label RTE cereals are "emulations" of popular RTE cereal national brands; they are also referred to as "National Brand Equivalents" or "NBEs."  For example, Kroger may offer Kroger's private label Honey Nut Toasted Oats cereal, which emulates General Mills' Honey Nut Cheerios.

25. While there may be some taste, appearance, or quality differences between the branded RTE cereal and the private label emulations, the primary differences are the wholesale and retail prices.  Branded RTE cereal prices are substantially higher than private label RTE cereal prices because they incur most of the costs of advertising or promotional efforts for their products.  By contrast, there is very little, if any, advertising or promotional spend by private label suppliers.  Therefore, there is usually a gap between the retail prices of branded and private label RTE cereal products.  This price gap will vary across retailers and across emulations, but is typically between 20 and 30 percent.

26. Generally, U.S. retailers do not view branded RTE cereals as interchangeable with private label RTE cereal products.  For several reasons, retailers derive a unique value from offering private label RTE cereal, which they could not replicate by simply switching private label RTE cereal inventory over to branded RTE cereal products.  First, retailers find it profitable to sell private label RTE cereal products and may earn higher margins on sales of private label RTE cereal than they do on sales of branded RTE cereal.  Second, retailers value having a private label RTE cereal offering because it allows them to offer a lower cost, but acceptable quality, option to consumers.  Third, a retailer's private label RTE cereal offering helps differentiate that retailer from its competitors, and thereby helps promote the retailer's brand and foster customer loyalty.

27. For these reasons, retailers would not switch their purchases of private label RTE cereals to branded RTE cereals in sufficient quantity or numbers to render unprofitable a small but significant non-transitory increase in price ("SSNIP") on private label RTE cereal.

28. The relevant market does not include private label "natural and organic" RTE cereal formulations.  Retailers and end consumers do not view natural and organic cereals as substitutes

for conventional cereals.  Retailers typically source conventional (*i.e.*, non-natural/organic)
cereals through separate processes, and many of the suppliers of natural and organic cereals are
different than the suppliers for conventional RTE cereals.  Natural and organic cereals tend to
have healthier and more expensive inputs and are consequently priced significantly higher than
their conventional counterparts.  Thus, retailers could not effectively defeat a SSNIP on
conventional private label RTE cereals by switching their purchases to natural and organic RTE
cereals.

**B.      Relevant Geographic Market**

29. The relevant geographic market in which to assess the competitive effects of the
Proposed Acquisition is no broader than the United States.  Customers based in the United States
cannot arbitrage or substitute based on different prices offered to customers outside the United
States.

30. Competition among private label RTE cereal suppliers occurs at the national level.  Many
large retailers have locations in multiple regions across the United States, generally select a
single supplier for all locations, and sell the same nationally sourced private label RTE cereal
products across their entire retail footprint.  Post and TreeHouse have national distribution
networks to transport their private label RTE cereal throughout the United States.  Post and
TreeHouse each produce within the United States most of the private label RTE cereal they sell
to U.S. retailers.

**V.      MARKET STRUCTURE AND THE PROPOSED ACQUISITION'S
PRESUMPTIVE ILLEGALITY**

31. Post and TreeHouse are the two largest suppliers of private label RTE cereal to retailers
in the United States.

32. There is only one other meaningful private label RTE supplier, Gilster-Mary Lee.  Other private label RTE cereal suppliers are significantly smaller than Defendants and have limited competitive significance.  For example, the most prominent foreign manufacturer, Brüggen, accounts for ███████████ of private label RTE cereal sales in the United States.

33. Combined, Post and TreeHouse would account for over ██████ of the market for the sale of private label RTE cereal to retailers in the United States.  Based on Post's ordinary course documents, in 2018, TreeHouse held a ██████ share of the private label RTE cereal market, followed by Post with ██████, and Gilster-Mary Lee with ██████.  The remainder is a mix of all other suppliers, accounting for about ██████.

34. The Merger Guidelines and courts typically measure concentration using the HHI.  The HHI is calculated by totaling the squares of the market shares of every firm in the relevant market.  Under the Merger Guidelines, a merger is presumed likely to create or enhance market power—and is presumptively illegal—when the post-merger HHI exceeds 2,500 and the merger increases the HHI by more than 200 points.

35. Based on Post's ordinary course estimates of market shares, the Proposed Acquisition would result in a post-acquisition HHI exceeding 5,000, with an increase of more than 2,000, in a market for the sale of conventional private label RTE cereal to retailers in the United States.  These concentration levels are well beyond what is necessary to establish a presumption of competitive harm.

36. Evidence showing that the Proposed Acquisition would substantially lessen competition and result in significant anticompetitive effects bolsters the presumption of competitive harm.

37. The Proposed Acquisition is presumptively illegal under relevant case law and the Merger Guidelines.

### VI.      ANTICOMPETITIVE EFFECTS: THE PROPOSED ACQUISITION WOULD ELIMINATE HEAD-TO-HEAD COMPETITION BETWEEN POST AND TREEHOUSE

38. The Proposed Acquisition would eliminate substantial direct competition between Post and TreeHouse, resulting in increased prices for retailers and end consumers.

39. Defendants are close competitors and two of only three meaningful suppliers of private label RTE cereal in the United States.  Many retailers view TreeHouse and Post as the only two alternatives due to their scale, prices, breadth of product offerings, and quality.  As a result, Defendants are the first and second choices for most retailer customers, and predominantly compete against each other to be a retailer's private label producer.

40. Retailer customers benefit from the competition between Defendants because they use this competition to secure lower prices for private label RTE cereal.

41. Private label competition can take place during a "request for proposal" ("RFP") process, through informal negotiations, or some combination of the two.  Typically, the private label supply process begins with an RFP in which the retailer sets forth its requirements in terms of desired private label RTE cereal product, desired nutritional requirements (*e.g.*, no artificial coloring), package size, and terms of delivery and payment.  Private label suppliers submit bids and the retailer selects the winner, based on a variety of factors, including price, quality, and service.  Retailers typically allow suppliers to improve upon their initial offers in order to solicit the best possible price and other contract terms.

42. The following are just a few of the examples of direct price competition between TreeHouse and Post for retailer customers:

      a.  In March 2018, █████ and TreeHouse had a contract for private label RTE cereal that extended until October 2018.  █████ inquired if Post could "[come] to the table with an aggressive box proposal" with the inducement of switching its business from TreeHouse to Post.  Post noted that this would be an opportunity to

"take volume from ███████████████." In an initial round of negotiations, Post offered to lower prices by ████ percent, but this was insufficient to win ██████ business away from TreeHouse. ██████ subsequently opened its business up for bid and awarded ██████ SKUs to Post from TreeHouse "based on competitive pricing."

b. In March 2018, ██████████ conducted an RFP process for ██ private label RTE cereal SKUs. At the time of the RFP, TreeHouse produced ███████ for ████████ and Post produced ██████. Following two rounds of bidding, ████████ moved ██████ from TreeHouse to Post due to better pricing by Post, generating annual savings of approximately $█ million.

c. In 2018 and 2019, ██████ issued an RFP to Post and TreeHouse for its ████████ ██████████████████, an emulation of Kellogg's branded ████████████████. TreeHouse was the incumbent supplier of this product. In the initial round of bidding, Post submitted a lower price than TreeHouse's opening offer in an attempt to win the business. TreeHouse responded "with a lower price, providing ██████ with significant savings from its previous cost for ██████."

d. 

e. In 2018, TreeHouse attempted to increase prices to ██████, which "prompted ████████ to bring [Post] in to quote the business." ████████ notified TreeHouse that Post provided competitive pricing on roughly ████████████ supplied by TreeHouse. Ultimately, ██████████ moved most of its business to Post, resulting in a total savings of $1.22 million relative to TreeHouse's pricing.

43. Defendants also compete aggressively on non-price terms to win retail business by offering high quality and innovative products. Both Post and TreeHouse seek to win business by

establishing the quality of their formulations (taste, texture, consistency, etc.).  In addition,

retailers consider quality metrics when selecting their private label RTE cereal suppliers.  For

example, several retailers have sought to grow their private label sales and distinguish their

private label RTE cereal offerings from those of competing retailers by offering "clean label"

formulations, or formulations free of certain artificial ingredients and preservatives.  Post and

TreeHouse raced to develop new clean label formulas for ██████████████████████

███████████████████, submitting their products to ███████ for evaluation, and refining

them until they were of very high quality.

    44. The head-to-head competition between Defendants results in lower prices, higher quality,

and more innovation in private label RTE cereal.  By eliminating this competition, the Proposed

Acquisition would harm retailer customers and end consumers.

    45. Competition from other private label RTE cereal suppliers would not replace the

competition lost by the Proposed Acquisition.  Only one other suppler, Gilster-Mary Lee,

imposes any meaningful constraint on Post or TreeHouse today.

    46. Numerous retailers have indicated that Post and TreeHouse offer greater innovation and

manufacture higher quality private label RTE cereal products than Gilster-Mary Lee, which is

why these retailers have shifted business away from Gilster-Mary Lee in favor of TreeHouse and

Post.  Defendants' own ordinary course documents confirm that they do not view Gilster-Mary

Lee as an equal competitor, describing Gilster-Mary Lee as using "low quality inputs," offering

"poor emulations" and having "sub-par" quality and service.  Consequently, for many retailers,

Gilster-Mary Lee may not be an adequate alternative to Post and TreeHouse, and would

therefore not be a meaningful constraint on Post if the Proposed Acquisition were consummated.

47. Although there are other private label RTE cereal suppliers in the United States, their presence would not prevent a price increase post-acquisition.  Collectively, all other private label suppliers account for approximately ▌ percent of private label RTE cereal sales in the United States.  These low sales figures reflect the fact that retailers do not see these other suppliers as equivalent to Post, TreeHouse, or even Gilster-Mary Lee.

48. Competition by national brands will also be insufficient to constrain post-acquisition price increases.  While competition from branded RTE cereal does impose some competitive constraint on private label RTE cereal prices generally, and on Post and TreeHouse prices in particular, a large part of what constrains Post's and TreeHouse's prices is competition from each other.  Removing this constraint will likely result in substantial harm to retailers and end consumers.

## VII.    LACK OF COUNTERVAILING FACTORS

49. Neither entry by new market participants nor expansion by current market participants would be timely, likely, or sufficient to deter or counteract the likely anticompetitive effects of the Proposed Acquisition.

50. Entry by a branded RTE cereal manufacturer in private label is unlikely; thus, branded manufacturers will not offset the lost competition between Defendants. ███████████

██████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████. Thus, it is highly unlikely that branded RTE cereal manufacturers will begin producing private label RTE cereal.

51. Successful and timely entry or expansion by international suppliers is also unlikely. Retailers have a strong preference for sourcing private label RTE cereal products domestically, and international suppliers lack meaningful name recognition with U.S. retailers.  Other RTE cereal companies, including co-manufacturers and ingredient suppliers, are also unlikely to replace successfully the competition lost due to the Proposed Acquisition.  Co-manufacturers produce limited RTE cereal products on behalf of national brands and do not market directly to retailers.

52. Retailers are also unlikely to self-manufacture their own private label RTE cereals due to the significant costs and capital investment required to own and operate RTE cereal production facilities.

53. Defendants cannot demonstrate cognizable and merger-specific efficiencies that rebut the strong presumption and evidence that the Proposed Acquisition likely would substantially lessen competition in the relevant market.

54. Defendants cannot establish that TreeHouse's private label RTE cereal business will fail and its assets will exit the market absent the Proposed Acquisition.

## VIII.  LIKELIHOOD OF SUCCESS ON THE MERITS, BALANCE OF EQUITIES, AND NEED FOR RELIEF

55. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), authorizes the Commission, whenever it has reason to believe that a proposed acquisition is unlawful, to seek preliminary injunctive relief to prevent consummation of an acquisition until the Commission can adjudicate the Proposed Acquisition's legality in an administrative proceeding.  In deciding whether to grant relief

authorized by Section 13(b), this Court must balance the likelihood of the Commission's ultimate success on the merits against the public equities, using a sliding scale.  The principal public equity weighing in favor of issuance of preliminary injunctive relief is the public interest in effective enforcement of the antitrust laws.

56. The Commission is likely to succeed in proving that the effect of the Proposed Acquisition may be substantially to lessen competition or tend to create a monopoly in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, or Section 5 of the FTC Act, 15 U.S.C § 45.  In particular, the Commission is likely to succeed in demonstrating, among other things, that:

    a.  The Proposed Acquisition would have anticompetitive effects in the market for private label RTE cereal sold to retailers in the United States;

    b.  Substantial and effective entry or expansion in this market is difficult and would not be timely, likely, or sufficient to offset the anticompetitive effects of the Proposed Acquisition;

    c.  The efficiencies asserted by Defendants are insufficient as a matter of law to justify the Proposed Acquisition; and

    d.  Defendants have not established that TreeHouse's private label RTE cereal business unit is a failing division.

57. Preliminary relief is warranted and necessary.  Absent preliminary relief, should the Commission rule, after the full administrative proceeding, that the Proposed Acquisition is unlawful, reestablishing the status quo ante of vigorous competition between Post and TreeHouse would be difficult, if not impossible, if the Proposed Acquisition has already occurred.  Moreover, without relief from this Court, substantial harm to competition would likely occur in the interim, even if a suitable divestiture remedy were obtained later.

58. Accordingly, the equitable relief requested here is in the public interest.  Wherefore, Plaintiff respectfully requests that this Court:

    a.   Enter the parties' stipulated temporary restraining order;

    b.   Preliminarily enjoin Defendants from taking any further steps to consummate the Proposed Acquisition, or any other acquisition of stock, assets, or other interests of one another, either directly or indirectly, pending a full administrative hearing;

    c.   Retain jurisdiction and maintain the status quo until the administrative proceeding that the Commission has initiated is concluded; and

    d.   Award such other and further relief as the Court may determine as appropriate, just and proper.

Dated: December 27, 2019

Of counsel:

    IAN R. CONNER
    (D.C. Bar 979696)
    Director
    Federal Trade Commission
    Bureau of Competition

    MELISSA C. HILL
    (D.C. Bar 990479)
    Deputy Assistant Director
    Federal Trade Commission
    Bureau of Competition

    JONATHAN LASKEN
    (D.C. Bar 997251)
    Senior Trial Counsel
    Federal Trade Commission
    Bureau of Competition

    ROHAN K. PAI (D.C. Bar 1015652)
    STEPHANIE CUMMINGS
    HENRY HAUSER (D.C. Bar 1614882)
    KAREN HUNT (D.C. Bar 1023534)
    RYAN QUILLIAN (D.C. Bar 994846)
    AMY RITCHIE (D.C. Bar 974784)
    ANTHONY SAUNDERS

    Attorneys
    Federal Trade Commission
    Bureau of Competition
    Mergers IV Division

Respectfully Submitted,

JENNIFER MILICI
(D.C. Bar 987096)
Chief Trial Counsel
Federal Trade Commission
Bureau of Competition
600 Pennsylvania Avenue, NW
Washington, DC 20580
Telephone: (202) 326-2912
Email: jmilici@ftc.gov

*Counsel for Plaintiff Federal Trade Commission*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 27th day of December 2019, I served the foregoing on the following counsel via electronic mail:

Kenneth S. Reinker, Esq.
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
kreinker@cgsh.com
(202) 974-1743

*Counsel for Post Holdings, Inc.*

Raymond A. Jacobsen, Jr., Esq.
McDermott Will & Emery LLP
The McDermott Building
500 North Capitol Street, N.W.
Washington, D.C. 20001-1531
rayjacobsen@mwe.com
(202) 756-8028

*Counsel for TreeHouse Foods, Inc.*

Jennifer Milici, Esq.
*Attorney for Plaintiff Federal Trade Commission*